UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MELVIN DEAS, on behalf of himself, individually, and on behalf of all others similarly-situated,

                              Plaintiff,

-against-

ALBA CARTING & DEMOLITION INC., ALBA SERVICES INC., and ANDREW HORAN, individually,

                              Defendants.

**Docket No.:**
**1:17-cv-03947-DCF**

---

### DECLARATION OF MICHAEL R. MINKOFF, ESQ. IN SUPPORT OF NAMED PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, SERVICE AWARDS, AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND THE ENTRY OF FINAL JUDGMENT

I, MICHAEL R. MINKOFF, ESQ., declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am senior counsel at the law firm Borrelli & Associates, P.L.L.C. ("Firm" or "B&A" or "Class Counsel"), attorneys for Named Plaintiff Melvin ("Named Plaintiff" or "Plaintiff"), the Opt-in Plaintiffs, as well as the claims of the Rule 23 New York settlement class (referred to collectively, with Plaintiff and Opt-in Plaintiffs, where appropriate, as "Plaintiffs" or "Class Members"), in the above-captioned matter.  I submit this Declaration in support of Named Plaintiff's Motion for Final Approval of Class and Collective Action Settlement, Service Awards, an Award of Attorneys' Fees and Expenses, and the Entry of Final Judgment.

2. For a complete recount of the background, settlement analysis, settlement terms, and settlement procedure, I respectfully refer the Court to my declaration filed on September 11, 2020, in support of Named Plaintiff's Motion for Preliminary Approval of the Settlement, Certification of Settlement Class, Appointment of Named Plaintiff as Class Representative, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of Proposed Notice of

Settlement and Class Action Settlement Procedure ("Preliminary Approval Motion"). *See* Dkt. No. 154, ¶¶ 2-35. A true and correct copy of the settlement agreement, along with the Court-approved stipulations amending certain provisions of it, are attached hereto collectively as **Exhibit A** (hereinafter "the Agreement").

## CLASS ACTION PROCEDURE

3. On October 1, 2020, the Court entered an order granting Plaintiff's Preliminary Approval Motion (hereinafter "Preliminary Approval Order"). Dkt. No. 155.

4. In the Preliminary Approval Order, the Court certified, for settlement purposes only, the following two partially overlapping classes under Rule 23 and Section 216(b) of the Fair Labor Standards Act ("FLSA"), defined respectively as:

   a. under 29 U.S.C. § 216(b), all current and former laborers who worked for Defendants at any point from May 24, 2011, through September 11, 2020, and who submit a Claim Form and/or who signed the Parties' Settlement Agreement to thereby opt-in to this action; and

   b. under Fed. R. Civ. P. 23(a) and (b)(3), all current and former laborers who worked for Defendants in New York at any point from May 24, 2011, through September 11, 2020.

5. The Court additionally approved the parties' proposed Notice of Class Action Settlement and Claim Form (together as "Notice Packet" or "Notice(s)").

6. Based on the Firm's efforts to obtain the most competitive quote for the claims administration expenses to be incurred in this matter (after soliciting bids from multiple potential claims administrators), the Court appointed Rust Consulting, Inc. ("Rust") as claims administrator to be responsible for communicating with Class Members, disseminating the Notice Packet, accepting and maintaining documents sent by Class Members, including Claim Forms, objections,

and/or opt-out statements, and other documents relating to claims administration, and administering claims for allocation by cutting and distributing checks to participating class members, Class Counsel, and Service Award recipients, according to the formula set forth in the Agreement and its attachments.

7. The Preliminary Approval Order additionally required Rust to send the Notices to Class Members by no later than November 16, 2020, and required any Claim Forms, opt-out statements, or objections to be received by on or before January 15, 2021.

8. The Court's Preliminary Approval Order also scheduled a briefing schedule for this motion and a fairness hearing for March 2, 2020, at 10:00 a.m.

## SETTLEMENT BREAKDOWN

9. The Net Settlement Amount from which payments would/will be made to participating members of the 311-person Class, subject to Court approval, is determined as follows:

| **Gross Settlement Fund**: | $1,500,000.00 |
|---|---|
| Attorney's Fees: | -$500,000.00 |
| Attorney's Costs: | -$11,321.10 |
| Service/Incentive Awards: | -$65,000.00 |
| Claims Administration Fees/Costs: | -$13,905.00 |
| **Net Settlement Amount**: | $909,773.90 |

10. As provided in the Preliminary Approval Motion, B&A determined that the maximum damage calculations for actual unpaid overtime totaled $1,280,609.78 based on the Firm's robust analysis of the Class data gathered from the Plaintiff and Opt-in Plaintiffs and produced by Defendants over the course of the litigation.

11. As also explained in the Preliminary Approval Motion, the Class Members' individual recoveries, and an explanation as to how their individual settlement amounts were or would be calculated, were both included in the Notice.

12. Regarding the Notice procedure, the Parties worked together with Rust to prepare the Notice for mailing but were somewhat delayed due to ensuring the accuracy of the individual settlement share calculations to be included with each Class Member's Notice Packet.

13. Due to these steps, Rust was slightly delayed in mailing the Notice - - sending it out on November 25, 2020 rather than November 15, 2020. As a result, the Bar Date for submitting claim forms, objections, or opt-out statements was also extended from January 15, 2021 to January 25, 2021.

14. As a part of Named Plaintiff's Final Approval Motion, Named Plaintiff requests that the Court grant nine service awards - - to Named Plaintiff and eight of the Opt-in Plaintiffs - - totaling $65,000.00 (together, as "Service Award Recipients"). Specifically, Named Plaintiff requests the following awards:

- Named Plaintiff Melvin Deas: $15,000.00;
- Opt-in Plaintiff Charles Pitt: $7,500.00;
- Opt-in Plaintiff Floyd Jones: $7,500.00;
- Opt-in Plaintiff Cory Bennet: $7,500.00;
- Opt-in Plaintiff Gerard Foote: $7,500.00;
- Opt-in Plaintiff Robert O'Connor: $5,000.00;
- Opt-in Plaintiff Martin Carrera: $5,000.00;
- Opt-in Plaintiff Jose Ordonez: $5,000.00; and
- Opt-in Plaintiff Antonio Bonilla: $5,000.00.

15. As justification for this award, each of the requested Service Award Recipients have all vigorously pursued the interests of the Class, and we submit that for purposes of settlement, their interests and the Class are aligned. Indeed, Named Plaintiff and these Opt-in Plaintiffs were instrumental in the Firm's investigation and analysis of the vital facts relevant to the Class's claims, as well as the defenses that Defendants raised throughout the course of the litigation. At the outset of the case, Named Plaintiff, along with Charles Pitt, Floyd Jones, and Cory Bennet, provided critical information and documents, allowing the Firm to efficiently move for conditional certification. Thereafter, Gerard Foote became one of the first additional Opt-in Plaintiffs to join this action, and he became instrumental, along with the already-joined Plaintiffs, for example by attending the Parties' first mediation session with the Court's appointed mediator, Mr. Robert Kheel. Subsequently, Robert O'Connor and Martin Carrera provided additional documents that our office shared with Defendants, and which prompted Defendants to agree to participate in a second (and then third) mediation with a new mediator, Mr. Martin Scheinman, the last of which led to an agreement to resolve this matter in principle.

16. In addition, Opt-in Plaintiffs Jesus Ordonez and Antonio Bonilla provided written, sworn statements in support of Plaintiffs' motion seeking potential sanctions based on Defendants' alleged retaliation against certain Opt-in Plaintiffs for joining the action - - filed in between the second and third mediations - - going so far as to attend a hearing, though not ultimately being required to testify.

17. All of these requested Service Award Recipients also participated in the lead-up to mediation by providing facts and evidence to rebut Defendants' claimed arguments in defense of Plaintiffs' allegations. They also remained actively involved throughout the litigation and negotiation process, conferring with the Firm regularly regarding next steps and strategy.

### PLAINTIFFS' COUNSELS' QUALIFICATIONS, TIME, AND EXPENSES

18. The Firm seeks an award of reasonable attorneys' fees and costs for its time and out-of-pocket expenses that it expended prosecuting this action. Throughout this litigation, the Firm maintained contemporaneous computerized time records for this matter, as we do with all Firm matters.

19. Every attorney and paralegal who worked on this case has kept contemporaneous time records of his/her time spent. The contemporaneous detailed time records associated with this matter, organized by attorney and paralegal, are attached hereto as **Exhibit B**. When calculated pursuant to the lodestar, Class Counsel's attorneys' fees, including both billable and entries marked as no-charge, are $181,296.00.

20. Attached hereto as **Exhibit C** is a statement of costs in this matter, which Michael J. Borrelli, the Firm's managing partner, maintains in the normal course of business on all B&A cases, detailing out-of-pocket costs and office charges incurred. The Firm's expenses in this matter are $11,317.22. This includes costs for the filing fee, service, postage, travel expenses, Westlaw research, mediation sessions, and PACER fees.

### QUALIFICATIONS OF THE FIRM AND MICHAEL J. BORRELLI

21. As of 2015, B&A had prosecuted over 1,000 cases in federal and state court, the overwhelming majority of which are on behalf of employees in either wage-and-hour or employment discrimination-type cases. *Vivaldo v. United Talmudical Acad. of Kiryas Joel, Inc., et al*, 2015 WL 4922961, at *5 (S.D.N.Y. June 18, 2015), *report and recommendation adopted,* 2015 WL 10793126 (S.D.N.Y. Sept. 17, 2015) (five and one-half years ago, noting that B&A had experience "prosecut[ing] over one thousand cases in state and federal court, the large majority of which are employment actions"). Besides this case, it has recently been appointed as class counsel

in the following matters: *Abraham v. Promise Home Care Agency, Inc.*, 18-cv-4502-GWG, Dkt. No. 121 (S.D.N.Y. Apr. 8, 2020); *Angerosa v. Moving Right Along Serv., Inc.*, 18-cv-04810-RML, Dkt. No. 37 (E.D.N.Y. Feb. 28, 2020); *Fitzpatrick v. Parkchester Dep't of Pub. Safety, LLC*, 18-cv-00211-JGK, Dkt. No. 47 (S.D.N.Y. Jan. 28, 2020); *McQuaid v. Capital Stack, LLC*, 18-cv-9230-ALC, Dkt. No. 49 (S.D.N.Y. Nov. 14, 2019); *Sealock v. Covance, Inc.*, 17-cv-5857-JMF, Dkt. No. 276 (S.D.N.Y. Oct. 8, 2019); *Crispi v. Mercy Drive, Inc.*, 23089/2018, Dkt. No. 36 (Sup. Ct. Bronx Cnty., Sept. 27, 2019); *Mosaid v. Sardi's Enters. Ltd.*, No. 160653/2019, Dkt. No. 16 (Sup. Ct. N.Y. Cnty. Apr. 29, 2019); *Espinal v. Victor's Café 52nd Street, Inc., et al.*, No. 16-cv-8057-VEC (S.D.N.Y. Mar. 25, 2019); *Callaham v. MTC Limousine & Corporate Coach, Inc.*, No. 63099/2017, Doc. No. 35 (Sup. Ct., Westchester Cnty., Dec. 17, 2018); *Vazquez v. Tibana Finishing, Inc.*, No. 17-cv-1907 (PK), Dkt. 42 (E.D.N.Y. Sept. 13, 2018); *Gittens v. 7-Eleven, Inc.*, 17-cv-06378-SJF-AKT, ECF # 29 (E.D.N.Y. July 31, 2018); *Callaham v. MTC Limousine & Corp. Coach, Inc.*, No. 63099/2017, Dkt. 21 (Sup. Ct. Westchester Cnty. June 28, 2018); *Jones v. Strategic Financial Solutions, L.L.C.*, 16-cv-04617-SN, ECF # 92 (S.D.N.Y. June 13, 2018); *Jordan v. MV Transp., Inc.*, No. 513422/2016, Dkt. 16, (Sup. Ct. Kings Cnty. Mar. 14, 2018); *Davis v. Uptown Commuc'ns & Elec., Inc.*, 16-cv-3990-LB, ECF # 105 (E.D.N.Y. Nov. 15, 2017); *Marin v. Apple-Metro, Inc.*, 2017 WL 4950009 (E.D.N.Y. Oct. 4, 2017); *Russo v. Armonk Limousine Car Service, Inc.*, 15-cv-9789-CS, ECF # 65 (S.D.N.Y. July 28, 2017); *Copper v. Calvary Staffing, LLC*, 14-cv-3676-FB-RLM, ECF # 252 (E.D.N.Y. Sept. 8, 2017); *Saravia v. Check-Mate Indust., Inc.*, Index No. 06413/2014, NYSCEF # 45 (Sup. Ct. Suffolk Cnty. July 19, 2017); *Vivaldo*, 2015 WL 4922961, at *5; *Guido v. Ambassador Pers. Servs. & Flowers Foods, Inc.*, No. 14 Civ. 5004, ECF # 5 (E.D.N.Y. Apr. 10, 2015); *Rosario v. Valentine Ave. Discount Store*, 2013 WL 2395288, at *10 (E.D.N.Y. May 31, 2013). The Firm has represented and

currently represents FLSA collectives and New York Labor Law ("NYLL") classes, both large and small, in hundreds of cases.

22. Michael J. Borrelli, Esq. is the founding and managing member of B&A. As a member of the bar of the State of New York, he has practiced law for almost twenty years with a primary focus on the litigation of labor and employment law cases. He is also admitted to practice before the United States Court of Appeals for the Second Circuit, as well as the United States District Courts for the Eastern, Southern and Northern Districts of New York.

23. Mr. Borrelli received an undergraduate degree in communications from Hofstra University in 1997.

24. In 2001, Mr. Borrelli received the degree of Juris Doctor from St. John's University School of law.

25. Prior to founding B&A, Mr. Borrelli practiced law as an associate at: Davis & Hersh in Hauppauge, New York; Guercio & Guercio in Farmingdale, New York; and as General Labor Counsel for Flushing Manor Geriatric, Inc., three nursing home facilities employing approximately 1,000 workers in New York.

26. In March 2006, Mr. Borrelli incorporated B&A, which in nearly fifteen years has grown into its current state with two partners, eleven associates, and a total staff of approximately thirty employees. The Firm has two offices, one in Garden City and the other in Manhattan.

27. At any given time the Firm maintains a caseload of between 200 and 300 active cases with approximately 150 cases in present litigation.

28. The large majority of the Firm's clients are plaintiff-employees. Most of them cannot afford to pay any fees to retain our services and for those clients we handle their cases on a full contingency. Some clients can afford a minimal fee for our Firm to handle their cases and

for those clients we take their cases on a mixed contingency arrangement. While many clients pay our hourly rates, many other clients compensate us based upon a percentage of any judgment or settlement and/or through settlements, awards, or fees garnered under fee-shifting statutes such as the FLSA and the NYLL. This matter was also taken on a full contingency basis.

29. The current hourly rate regularly charged for Mr. Borrelli's services and paid by our clients is $500.00.

30. The hourly rate used to calculate the lodestar for Mr. Borrelli in this matter is $400.00.

## QUALIFICATIONS OF ALEXANDER T. COLEMAN

31. Alexander T. Coleman is a partner at B&A who has practiced at the Firm since January 2010. He is admitted to practice law and is a member of the bar in the State of New York and Commonwealth of Virginia, as well as the United States Court of Appeals for the Second Circuit and the United States District Courts for the Southern and Eastern Districts of New York. Mr. Coleman received an undergraduate degree in communications from the University of Wisconsin-Madison in 2002 and in 2008, he earned the degree of Juris Doctor, *summa cum laude*, from American University, Washington College of Law, where he graduated 7th overall in his class of 402 students.

32. After graduation, Mr. Coleman was admitted to the Virginia bar in 2008 and he completed a one-year clerkship as the Law Clerk to the Honorable Jane Marum Roush of the Fairfax County Circuit Court in Fairfax, Virginia, the trial court of general jurisdiction in Virginia. After completing his clerkship in August 2009, he returned home to New York, was admitted to the New York bar in January 2010, began working at B&A that same month. Since that time, Mr.

Coleman has appeared extensively in the federal and state courts to which he is admitted (other than the Virginia state courts, where his bar membership is currently "inactive").

33. From 2010 through 2013, Mr. Coleman handled and managed a complex caseload ranging from thirty-to-forty cases at any given time, with more than half of his cases litigated in either federal or state court. All but a tiny handful of his cases were in the field of wage-and-hour law or employment discrimination. For all of his cases, Mr. Coleman is responsible for completing all of the necessary processes, including drafting and arguing all necessary motions, taking and defending all depositions, conducting any necessary evidentiary hearings, negotiating settlements for our clients, and handling all aspects of trial should a case proceed that far. He has conducted multiple employment trials and administrative hearings, both on his own and with other counsel, taking cases to verdict.

34. In January 2014, the Firm gave Mr. Coleman the title of Senior Counsel, in which capacity, in addition to still managing his own caseload of ten-to-fifteen cases at a time, he oversaw and directly supervised all of the legal work of all the Firm's associates. In December 2015, the firm named Mr. Coleman a partner at B&A. His responsibilities remain unchanged from when he served as Senior Counsel.

35. Mr. Coleman's current hourly rate billed is $400.00.

36. The hourly rate used to calculate the lodestar for Mr. Coleman in this matter is $350.00.

**QUALIFICATIONS OF MICHAEL R. MINKOFF**

37. Undersigned counsel holds the title of Senior Counsel with B&A. I graduated from Boston College in 2009, receiving a bachelor's of arts degree, *summa cum laude.* Thereafter, I received the degree of Juris Doctor, *cum laude*, from The George Washington University Law

10

School in 2013, where I served as a Dean's Fellow who taught legal research and writing along with an adjunct professor. While in Washington, D.C., I served as a law clerk to the counsel to the court at the United States Court of Appeals for Veterans claims.

38. I gained admission to practice in the States of New York and New Jersey in December of 2013, and was subsequently admitted to the Eastern, Southern, and Northern Districts of New York. Since joining B&A in February of 2015, I have handled a caseload as high as fifty-seven cases, the vast majority of which are in active litigation in state and federal courts, and which primarily deal with wage and hour or discrimination matters. The Firm named me Senior Counsel in January 2021.

39. I have been the lead associate handling this case since June 2018.

40. Besides this case, I have been lead counsel in several class actions, including *Abraham v. Promise Home Care Agency, Inc.*, 18-cv-4502-GWG, Dkt. No. 121 (S.D.N.Y. Apr. 8, 2020); *Fitzpatrick v. Parkchester Dep't of Pub. Safety, LLC*, 18-cv-00211-JGK, Dkt. No. 47 (S.D.N.Y. Jan. 28, 2020); *McQuaid v. Capital Stack, LLC*, 18-cv-9230-ALC, Dkt. No. 49 (S.D.N.Y. Nov. 14, 2019); *Espinal v. Victor's Café 52nd Street, Inc., et al.*, No. 16-cv-8057-VEC (S.D.N.Y. Mar. 25, 2019); *Gittens v. 7-Eleven, Inc.*, 17-cv-06378-SJF-AKT, ECF # 29 (E.D.N.Y. July 31, 2018); *Jones v. Strategic Financial Solutions L.L.C., et al.*, No. 16-cv-4617-SN, Dkt. No. 83 (S.D.N.Y. Dec. 21, 2017); *Marin v. Apple-Metro, Inc.*, 2017 WL 4950009 (E.D.N.Y. Oct. 4, 2017); and *Saravia v. Check-Mate Indust., Inc.*, Index No. 06413/2014, NYSCEF # 45 (Sup. Ct. Suffolk Cnty. July 19, 2017), all wage-related cases in which B&A was appointed as class counsel.

41. I have worked as the lead associate on this matter since its inception.

42. My typically hourly rate billed is $300.00.

43. The hourly rate used to calculate the lodestar for me in this matter is $290.00.

## QUALIFICATIONS OF JOAN B. LOPEZ

44. Joan B. Lopez is a former junior associate of the Firm. Ms. Lopez received the degree of Juris Doctor from the Northeastern School of Law in 2015 and was admitted to practice in the State of New York in January of 2016. Ms. Lopez was subsequently admitted to the Eastern and Southern Districts of New York. Ms. Lopez worked at B&A from May of 2016 until July 2018.

45. Ms. Lopez worked on this matter from March of 2017 until the end of June of 2018, primarily serving as the lead associate prior to undersigned counsel assuming that role.

46. The hourly rate typically billed for Ms. Lopez is $250.00, which is the hourly rate requested for her in this matter.

## QUALIFICATIONS OF THOMAS CROUCH

47. Thomas R. Crouch is a former junior associate at B&A who assisted me with discovery on this matter from August to October 2018.

48. Mr. Crouch received the degree of Juris Doctor from the University of Georgia School of Law in 2013 and was admitted to practice in the State of South Carolina in 2013. After completing a one-year clerkship with the Honorable Judge Perry M. Buckner, III, of the South Carolina 14th Judicial Circuit Court, Mr. Crouch practiced law in South Carolina for two years.

49. Mr. Crouch was later admitted to practice in the State of New York in January of 2018, and he was subsequently admitted to the Eastern and Southern Districts of New York on May 8, 2018.

50. Mr. Crouch joined B&A in January of 2018 and worked on this matter in the late summer / early fall of 2018.

51. The hourly rate typically billed for Mr. Crouch was $250.00, which is the hourly rate for him that we used to calculate the lodestar in this matter.

## QUALIFICATIONS OF KENNETH ST. JOHN

52. Kenneth F. St. John is a former junior associate with B&A. Mr. St. John received an undergraduate degree in political science from Boston College in 2014, and in 2017, received the degree of Juris Doctor from St. John's University School of Law. He was admitted to practice in the State of New York in January 2018, and was subsequently admitted to the United States District Courts for the Southern and Eastern District Courts of New York. Mr. St. John joined B&A in October of 2017.

53. Mr. St. John worked on this matter from October 2017 through January 2019 - - first as a law clerk, and then after January 2018 as a junior associate - - assisting with discovery and with collecting opt-in Plaintiff information to assist with post-conditional certification matters including motion practice, damages calculations, and settlement negotiations.

54. The hourly rate typically billed for Mr. St. John after his admission to practice was $250.00. The hourly rate for him that we used to calculate the lodestar in this matter was $125.00 as a law clerk, and $200.00 as a junior associate.

## QUALIFICATIONS OF THE FIRM'S STAFF

55. Luiggi Tapia, Aneila Gonzalez, Pablo Martinez, Ramea Balcharanthian, and Priscilla Sandoval are current and former B&A staff members who assisted with various support responsibilities associated with this matter. Mr. Martinez and Mr. Tapia served as the lead paralegals in this matter, and they both earned their paralegal certificates from Nassau County Community College - - in 2011 and 2016, respectively. Ms. Gonzalez is the Firm's office manager who provided administrative and paraprofessional support throughout this matter. Ms. Sandoval,

Ms. Cline, and Ms. Balcharanthian are each legal assistants, providing support to Mr. Tapia, Mr. Martinez, Ms. Gonzalez, and undersigned counsel as needed.

56. The hourly rate used to calculate the lodestar for Mr. Tapia's and Mr. Martinez's time is $90.00.[1]

57. Affidavits of local attorneys practicing in employment law attesting to the reasonableness of the Firm's requested fees are attached hereto as **Exhibit D**.

58. Based on the foregoing, we respectfully submit that the Court grant final approval of the class settlement in this action. A proposed order for the Court's consideration is attached hereto as **Exhibit E**.

Dated: New York, New York
       February 23, 2021

                        Respectfully submitted,

                        BORRELLI & ASSOCIATES, P.L.L.C.
                        *Attorneys for Plaintiffs*
                        655 Third Avenue, Suite 1821
                        New York, New York 10017
                        Tel.   (212) 679–5000
                        Fax.  (212) 679-5005

By: _____
     Michael R. Minkoff, Esq. (MM 4787)

---

[1] The Firm "No Charged" the time for Ms. Gonzalez, Ms. Sandoval, and Ms. Cline and their time is not included in the Firm's lodestar.