UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELVIN DEAS, on behalf of himself, individually, and on behalf of all others similarly-situated,

<div style="margin-left:2em">Plaintiff,</div>

<div style="margin-left:2em">-against-</div>

ALBA CARTING & DEMOLITION INC., ALBA SERVICES INC., and ANDREW HORAN, individually,

<div style="margin-left:2em">Defendants.</div>

**Docket No.:**
**1:17-cv-03947-DCF**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, SERVICE AWARDS, AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND THE ENTRY OF <u>FINAL JUDGMENT</u>**

<div style="text-align:center">

Borrelli & Associates, P.L.L.C.
Michael R. Minkoff
Alexander T. Coleman
Michael J. Borrelli
655 Third Avenue, Suite 1821
New York, New York 10017
(212) 679-5000
(212) 679-5005
*Attorneys for Plaintiffs*

</div>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………i

I.     PRELIMINARY STATEMENT ......................................................................1

II.    BACKGROUND ...............................................................................................2

    A.    Procedural History, Plaintiff's Allegations, Discovery, and Mediation............2

    B.    Order Granting Preliminary Approval of Settlement......................................3

    C.    Claims Administration ....................................................................................3

III.   ANALYSIS ........................................................................................................5

    A.    The Rule 23 Class Action Settlement is Fair, Adequate, and Reasonable .......5

        1.    *Procedural Fairness*.................................................................................6

        2.    *Substantive Fairness* .............................................................................7

    B.    The Court Should Approve the Settlement of the FLSA Claims ....................11

    C.    Service Award ................................................................................................12

    D.    Attorneys' Fees..............................................................................................15

        1.    *The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in this Circuit*........................15

            a.    *The Second Circuit Recently Found Percentage of the Gross Settlement Fund, Rather than Percentage of Fund Net Expenses to be Fair and Reasonable*....................................16

            b.    *The Goldberger Factors Support an Award of One-Third of the Gross Fund Created*..........................................................18

                i.    *The Firm's Time and Labor* ..............................................18

                ii.    *The Magnitude and Complexities of the Litigation* .........20

                iii.    *The Risk of Litigation* .......................................................20

                iv.    *The Quality of the Representation*.....................................21

                v.    *The Requested Fee in Relation to the Settlement* ............22

                vi.    *Public Policy Considerations*...........................................23

|  |  | 2. | *The Lodestar Cross-Check Further Supports an Award of One-Third of the Settlement Fund* | 25 |
|  |  |  | a.  *The Lodestar Multiplier is Within a Reasonable Range* | 25 |
|  |  |  | b.  *The Firm's Requested Rates are Fair and Reasonable* | 26 |
|  | E. | **Litigation Expenses** | | 28 |
|  | F. | **Claims Administrator's Fees and Costs** | | 29 |
| IV. | **CONCLUSION** | | | 29 |

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Alleyne v. Time Moving & Storage, Inc.*,
   264 F.R.D. 41 (E.D.N.Y. 2010) ..................................................................................... 9

*Azogue v. 16 for 8 Hospitality LLC*,
   2016 WL 441422 (S.D.N.Y. Aug. 19, 2016) ....................................................... 11, 16

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ...................................................... 6, 7, 19, 23

*Bijoux v. Amerigroup New York, LLC*,
   2016 WL 2839797 (E.D.N.Y. May 12, 2016) ........................................... 11, 20, 23

*Cabrera v. CBS Corp.*,
   2019 WL 502131 (S.D.N.Y. Feb. 8, 2019) ........................................................... 11

*Capsolas v. Pasta Resources, Inc.*,
   2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) .......................................................... 25

*Chavarria v. New York Airport Serv., LLC*,
   875 F. Supp. 2d 164 (E.D.N.Y. 2012) ................................................................... 8

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F.3d 199 (2d Cir. 2015) ................................................................... 1, 11, 12

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ..................................................................... 1, 8, 20

*Copper v. Cavalry Staffing, LLC et al.*,
   No. 14-cv-3676 (E.D.N.Y. Feb. 12, 2018) ........................................................... 27

*County of Suffolk v. Long Island Lighting*,
   907 F.2d 1295 (2d Cir. 1990) .................................................................................. 5

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ...................................................................................... 5

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011) ................................................................. 25

*Deposit Guar. Nat'l Bank v. Roper,*
  445 U.S. 326 (1980) ................................................................................ 23

*Donnelly v. Peter Luger of Long Island, Inc.,*
  2014 WL 12769046 (E.D.N.Y. Nov. 13, 20104) ........................................ 6

*Dupler v. Costco Wholesale Corp.,*
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) ..................................................... 8

*Fisher v. SD Protection Inc.,*
  948 F.3d 593 (2d Cir. 2020) .............................................. 11, 17, 22, 24

*Fleisher v. Phoenix Life Ins. Co.,*
  2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ........................................ 25

*Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Trust,*
  925 F.3d 63 (2d Cir. 2019) ................................................................ 15, 16

*Gay v. Tri-Wire Engineering Solutions, Inc.,*
  2014 WL 28640 (E.D.N.Y. Jan. 2, 2014) ............................................... 14

*Goldberger v. Integrated Res. Inc.,*
  209 F.3d 43 (2d Cir. 2000) .......................................... 8, 17, 18, 21

*Gonzalez v. City of N.Y.,*
  396 F. Supp. 2d 411 (S.D.N.Y. 2005) ..................................................... 9

*Gonzalez v. Scalinatella, Inc.,*
  112 F. Supp. 3d 5 (S.D.N.Y. 2015) ........................................................ 27

*Guan v. Long Island Bus. Institute, Inc.,*
  2020 WL 1289517 (S.D.N.Y. Mar 18, 2020) ..................................... 22, 23

*Hadel v. Gaucho, LLC,*
  2016 WL 3647600 (S.D.N.Y. June 30, 2016) ........................................ 26

*Hernandez v. Immortal Rise, Inc.,*
  306 F.R.D. 91 (E.D.N.Y. 2015) ................................................. 6, 9, 10, 12

*In re Adelphia Commc'ns Corp. Sec. Litig.,*
  271 Fed. App'x 41 (2d Cir. 2008) ........................................................... 8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
  164 F.R.D. 362 (S.D.N.Y. 1996) ............................................................. 9

iv

*In re W. Union Money Transfer Litig.*,
   2004 WL 3709932 (E.D.N.Y. Oct. 19, 2004)..................................................................... 9

*Johnson v. Brennan*,
   2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)................................................................ 14

*Khait v. Whirlpool Corp.*,
   2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ................................................................ 25

*Kochilas v. National Merchant Servs., Inc.*,
   2015 WL 5821631 (E.D.N.Y. Oct. 2, 2015)............................................................*passim*

*Kornell v. Haverhill Retirement Sys.*,
   790 Fed. App'x 296 (2d Cir. 2019) ...................................................................... 16, 17

*Lesser v. TIAA Bank, FSB*,
   2020 WL 6151317 (S.D.N.Y. Oct. 20, 2020) ................................................................ 25

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) .................................................................................... 11

*Malchman v. Davis*,
   706 F.2d 426 (2d Cir. 1983)............................................................................................ 5

*Marshall v. Deutsche Post DHL*,
   2015 WL 5560541 (E.D.N.Y. Sept. 21, 2015) ............................................................... 9

*Masters v. Wilhelmina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007).................................................................................... 16, 17

*McReynolds v. Richards–Cantave*,
   588 F.3d 790 (2d Cir. 2009)........................................................................................... 6

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012)..................................................................... 6, 25

*Perez v. Merrick Deli & Grocery, Inc. et al.*,
   13-cv-5166-ILG-JO (E.D.N.Y. Apr. 4, 2019) ........................................................... 27

*Picerni v. Bilingual Seit & Preschool Inc.*,
   925 F. Supp. 2d 368 (E.D.N.Y. 2013) ........................................................................ 11

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ..................................................................................... 17

*Pucciarelli v. Lakeview Cars, Inc.*,
  2017 WL 2778029 (E.D.N.Y. June 26, 2017) ................................................................. 18

*Puglisi v. TD Bank, N.A.*,
  2015 WL 4608655 (E.D.N.Y. July 30, 2015) .................................................................. 26

*Quow v. Accurate Mech.*,
  2018 WL 3368673 (S.D.N.Y. July 10, 2019) .................................................................. 11

*Reyes v. Altamarea Grp., LLC*,
  2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .................................................................. 14

*Reyes v. Buddha-Bar NYC*,
  2009 WL 5841177 (S.D.N.Y. May 28, 2009) .................................................................. 25

*Romero v. La Revise Assocs, L.L.C.*,
  58 F. Supp. 3d 411 (S.D.N.Y. 2014) .......................................................................... 6, 12

*Romero v. La Revise Assocs., LLC*,
  58 F. Supp. 3d 411 (S.D.N.Y. 2014) .............................................................................. 5

*Saldana v. Middletown Car-G-Cam Uni Corp.*,
  2015 WL 12591678 (S.D.N.Y. Sept. 23, 2015) ............................................................... 7

*Salto v. Alberto's Constr., LLC*,
  2020 WL 4383674 (S.D.N.Y. July 31, 2020) .................................................................. 27

*Sand v. Greenberg*,
  2010 WL 69359 (S.D.N.Y. Jan. 7. 2010) ....................................................................... 23

*Sandoval v. Materia, Bros., Inc.*,
  2013 WL 1759581 (S.D.N.Y. Apr. 24, 2013) .................................................................. 28

*Sierra v. Spring Scaffolding LLC*,
  2015 WL 10912856 (E.D.N.Y. Sept. 30, 2015) ............................................................... 12

*Stinson v. City of N.Y.*,
  256 F. Supp. 3d 283 (S.D.N.Y. 2017) ............................................................................. 9

*Suarez v. Rosa Mexicano Brands Inc.*,
  2018 WL 1801319 (S.D.N.Y. Apr. 13, 2018) .................................................................. 23

*Thornhill v. CVS Pharmacy, Inc.*,
  2014 WL 1100135 (S.D.N.Y. Mar. 20, 2014) .................................................................. 15

vi

*Torres v. Gristede's Operating Corp.*,
   2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ............................................................. 15

*Vivaldo v. United Talmudical Acad. of Kiryas Joel, Inc., et al*,
   2015 WL 10793126 (S.D.N.Y. Sept. 17, 2015) .......................................................... 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ..................................................................................... 6, 9

*Wolinsky v. Scholastic, Inc.*,
   900 F. Supp. 2d 332 (S.D.N.Y. 2012) ............................................................ 1, 11, 12

*Zimmer v. Paper Prods. Inc. v. Berger & Montague, P.C.*,
   758 F.2d 86 (3d Cir. 1985) ......................................................................................... 10

**Rules**                                                                                  **Page(s)**

Fed. R. Civ. P. 23 ...................................................................................................*passim*

**Other Authorities**                                                                      **Page(s)**

2 McLaughlin on Class Actions § 6:24 (8th ed.) ........................................................... 10

4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41, at
   108 (4th ed. 2002) ......................................................................................................... 9

Deborah R. Hensler et al., Class Action Dilemmas: Pursuing Public Goals for Private Gain 9–37
   (2000) ........................................................................................................................... 10

William Simon, Class Actions–Useful Tool or Engine of Destruction, 55 F.R.D. 375 (1973) .... 10

## I.   <u>PRELIMINARY STATEMENT</u>

This wage and hour action brought pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") concerns the claims of Named Plaintiff Melvin ("Named Plaintiff" or "Plaintiff"), the thirty participating Opt-in Plaintiffs, as well as the claims of the Rule 23 New York settlement class ("Rule 23 Plaintiffs," and referred to collectively, with Plaintiff and Opt-in Plaintiffs, where appropriate, as "Plaintiffs" or "Class Members"), against Defendants Alba Carting & Demolition, Inc., Alba Services Inc., and Andrew Horan, individually (collectively as "Defendants," and referred to with Plaintiffs as "the Parties").   On October 1, 2020, the Court entered an order granting Named Plaintiff's Motion for Preliminary Approval of the Settlement, Certification of Settlement Class, Appointment of Named Plaintiff as Class Representative, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of Proposed Notice of Settlement and Class Action Settlement Procedure (hereinafter "Preliminary Approval Order" and "Preliminary Approval Motion," respectively). *See* Dkt. Nos. 152-155.   Now, Named Plaintiff respectfully submits this motion seeking final approval of the class and FLSA settlement pursuant to Federal Rule of Civil Procedure 23(e), *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012).

For the reasons set forth herein, and upon the annexed Declaration of Michael R. Minkoff, Esq. ("Minkoff Decl."), executed on February 23, 2021, and the Declaration of Jennifer Mills, on behalf of Rust Consulting, Inc. ("Rust"), as Claims Administrator ("Mills Decl."), and all exhibits annexed thereto, and upon all prior pleadings and proceedings had herein, Named Plaintiff respectfully requests that the Court grant this motion and enter an Order as follows:

1) Granting final approval of the Settlement Agreement, annexed as **Exhibit A** to the Minkoff Decl.;

2) Authorizing the distribution of settlement checks to all Class Members who timely submitted a valid Claim Form and Release ("Claim Form") and/or who executed the Parties' Settlement Agreement, representing their respective shares of the Settlement Fund;

3) Awarding Service Awards to the Named Plaintiff and eight of the Opt-in Plaintiffs, in the aggregate amount of $65,000.00, for their services to the Class;

4) Awarding attorneys' fees in the amount of $500,000.00, for legal services performed in prosecuting and settling the claims in this action, to Borrelli & Associates, P.L.L.C. as Class Counsel;

5) Awarding $11,317.22 for costs and out-of-pocket expenses to Class Counsel;

6) Awarding $13,905.00 for claims administration fees and costs to Rust;

7) Providing for the release of all claims as specified in the Settlement Agreement by all Class Members who did not properly and timely opt-out of the settlement (of whom there were none); and

8) Dismissing this action against Defendants with prejudice, but with the Court's continued jurisdiction over the construction, interpretation, implementation, and enforcement of the Parties' settlement, as well as over the administration and distribution of the settlement fund.

## II.    BACKGROUND

### A.    Procedural History, Named Plaintiff's Allegations, Discovery, and Mediation

For a complete recount of the procedural history of this action, the Named Plaintiff's allegations, the discovery exchanged in this action, and the negotiations through which the Parties agreed to the proposed settlement of the collective and class action now before the Court, Plaintiff respectfully refers the Court to the sections of the Preliminary Approval Motion addressing same. *See* Dkt. No. 153, §§ II-III.

B.    **Order Granting Preliminary Approval of Settlement**

In its October 1, 2020 Preliminary Approval Order, the Court certified two separate classes, contingent upon and for the purposes of settlement only. *See* Dkt. No. 155, ¶ 3.  Additionally, *inter alia*, the Court approved the Parties' proposed Notice of Class Action Settlement and Claim Form ("Rule 23 Notice" or "Notice"). *See id.*, ¶ 8.  The Order additionally appointed Rust as the Claims Administrator and required Rust to send the Notice and Claim Form to Class Members by November 15, 2020, with any Claim Forms, opt-out statements, or objections to have been received by on or before January 15, 2021. *See id.*, ¶¶ 9-13.  The Court's Order also scheduled a briefing schedule for this motion and a fairness hearing to be held on March 2, 2021, at 11:00 a.m. *See id.*, ¶¶ 15-16.

C.    **Claims Administration**

Again, the parties jointly selected and the Court in its Preliminary Approval Order appointed Rust to administer the settlement. *See* Mills Decl., ¶ 3.  Rust received the Court-approved Notice from the Parties on October 1, 2020, which Rust formatted and combined with a postage pre-paid, pre-addressed return envelope, which together with the Claim Form comprised the Notice Packets to be sent to Class Members via First Class Mail. *See* Mills Decl., ¶ 7.  The Notice Packets advised Class Members of their right to be included in the Settlement, their right to submit Claim Forms to receive their settlement shares, their right to opt-out of the Settlement, their right to object to the Settlement, and the implications of each such action. *See* Mills Decl., ¶ 10.  The Notice Packets additionally advised Class Members of the requested attorneys' fees and service awards, the applicable deadlines and pertinent events, including the date and location of the Fairness Hearing, the approximate amount that each Class Member would receive from the

settlement, and how Class Members could obtain additional information. *See* Mills Decl., ¶ 10.  A sample Rule 23 Notice Packet is attached to the Mills Decl. as **Exhibit A**.

On November 9, 2020, Defendants' counsel provided Rust with a list (hereinafter, the "Class List") containing the names, and if available, last known mailing addresses, social security numbers, number of weeks worked, and phone numbers for all 311 Class Members. *See* Mills Decl., ¶ 8.  The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the United States Postal Service ("USPS"). *See* Mills Decl., ¶ 9.  The NCOA contains changes of address information filed with the USPS.  In the event that any individual had filed a USPS change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice Packet. *See* Mills Decl., ¶ 9.

On November 25, 2020, Rust mailed the Notice Packets via First Class Mail to all 311 Class Members contained in the Class List. *See* Mills Decl., ¶ 10.[1]

Of the 311 Notice Packets mailed, a total of seventy-six were returned as undeliverable by the USPS. *See* Mills Decl., ¶ 10.  Rust then used the Class Member's name, previous address, and social security number, if one was available, to try and obtain a current mailing address for those undeliverable Notice Packets. *See* Mills Decl., ¶ 10.  Through the seventy-six advanced address searches conducted, Rust was able to locate thirty-nine updated addresses and promptly mailed Notice Packets to those updated addresses. *See* Mills Decl., ¶ 10.

---

[1] The Parties worked together with Rust to prepare the Notice for mailing but were somewhat delayed due to ensuring the accuracy of the individual settlement share calculations to be included with each Class Member's Notice Packet.  Due to these steps, Rust was slightly delayed in mailing the Notice - - sending it out on November 25, 2020 rather than November 15, 2020.  As a result, the Bar Date for submitting claim forms, objections, or opt-out statements was also extended from January 15, 2021 to January 25, 2021. Minkoff Decl., ¶¶ 12-13.

4

Five of these thirty-nine re-mailed notices were returned as undeliverable a second time. *See* Mills Decl., ¶ 10. Thus, forty-two Notice Packets were not successfully delivered. *See* Mills Decl., ¶ 10.

As detailed in Named Plaintiff's Preliminary Approval Motion, the Gross Settlement Fund totals $1,500,000.00, with the Net Settlement Fund available to Class Members, of course subject to Court-approval of each item requested below, amounting to $909,773.90. *See* Minkoff Decl., ¶¶ 9-10. Between sending the Notice Packets, and the close of the claim-submission period on January 25, 2021, in total, Rust received fifty-two valid Claim Forms, which, when combined with the Settlement Agreement signatories (and removing duplicate submissions), amounts to a total of fifty-four Participating Claimants. *See* Mills Decl., ¶ 17. These fifty-four Participating Claimants are claiming a total of $213,632.09 of the Net Settlement Fund. *See* Mills Decl., ¶ 12. As of this date, Rust has received zero requests for exclusion and zero objections. *See* Mills Decl., ¶¶ 14-15. The average award is $3,717.01 per claimant and the highest claimed award is anticipated to be $8,659.67. *See* Mills Decl., ¶ 12. The breakdown of the Net Settlement Funds are detailed in the Minkoff Declaration and Mills Declaration.

III.    **ANALYSIS**

A.    **The Rule 23 Class Action Settlement is Fair, Adequate, and Reasonable**

Federal Rule of Civil Procedure 23(e) requires court approval for a class action settlement to ensure that it is "fair, adequate, and reasonable, and not a product of collusion." *Romero v. La Revise Assocs., LLC*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted) (noting that a court "must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness"). When analyzing a Rule 23(e) settlement, courts "consider both

procedural and substantive fairness." *Id*. (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013)); *accord Kochilas v. Nat'l Merchant Servs., Inc.*, 2015 WL 5821631, at *3 (E.D.N.Y. Oct. 2, 2015).

As explained in detail below, because this settlement is fair, reasonable, and adequate, the Court should approve it.

### 1.   **Procedural Fairness**

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 617-18 (S.D.N.Y. 2012) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *accord Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 99 (E.D.N.Y. 2015) (collecting cases).   In assessing the procedural fairness of a class settlement, courts favor "early settlement of class actions, when warranted." *Donnelly v. Peter Luger of Long Island, Inc.*, 2014 WL 12769046, at *4 (E.D.N.Y. Nov. 13, 20104) (collecting cases).   "There is a presumption of procedural fairness as to a proposed class settlement where that settlement is 'reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Romero*, 58 F. Supp. 3d at 420 (quoting *McReynolds v. Richards–Cantave*, 588 F.3d 790, 803 (2d Cir. 2009)).

Here, as thoroughly explained in Named Plaintiff's Preliminary Approval Motion, the process leading up to settlement strongly indicates procedural fairness.   Indeed, although this settlement was reached before the filing of a motion for Rule 23 class certification, the Parties litigated this case extensively, with Class Counsel having, *inter alia*, conducted the following tasks: investigated the Named Plaintiff's and Opt-in Plaintiffs' claims and Defendants' defenses thereto; engaged in combative motion practice, to wit, successfully opposing a motion to dismiss, amending the operative complaint, successfully moving for conditional certification and

6

disseminating notice, filing motions to compel and engaging in an adversarial evidentiary hearing regarding alleged retaliation; exchanged information relevant to the claims and potential damages of all Class Members for the purpose of exploring class-wide settlement, including by reviewing over one thousand pages of time and payroll records; conducted many telephonic interviews with the Named Plaintiff and Opt-in Plaintiffs concerning the relevant information of their employment, giving the Parties more than sufficient information to determine the reasonable range of settlement on a class-wide basis at this stage; and participated in three mediations - - one, though unsuccessful, with a member of this Court's mediation panel, Robert Kheel, Esq., during which Named Plaintiff and Opt-in Plaintiffs Floyd Jones, Charles Pitt, Cory Bennet, and Gerard Foote were present, and then two - - ultimately successful - - mediation sessions with a well-regarded labor and employment law mediator, Martin Scheinman, Esq., during which Named Plaintiff and Defendants' Chief Financial Officer, James Horan, were present. *See generally*, Dkt. No. 115, at 14-17. *See Saldana v. Middletown Car-G-Cam Uni Corp.*, 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) (citation omitted) (recognizing that a presumption of fairness "is increased when a settlement is reached with the assistance of an experienced mediator").

Based on these factors, and the procedural history extensively addressed in seeking and obtaining preliminary approval from the Court, as well as the fairness of the settlement procedure that the Court endorsed in its Preliminary Approval Order, procedural fairness is unquestionably satisfied.

### 2.    Substantive Fairness

In addition to being procedurally fair, the Rule 23 Settlement also satisfies the substantive fairness factors that courts in this Circuit apply when determining whether final approval of a class action settlement is appropriate. *See Beckman*, 293 F.R.D. at 474 (citing *Grinnell*, 495 F.2d at

7

463).   More specifically, in *Grinnell*, the Second Circuit held that courts should consider the following factors when evaluating a class action settlement for final approval:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463 (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000).   Here, Plaintiff refers the Court to the evaluation of the *Grinnell* factors in Named Plaintiff's Preliminary Approval Motion (*see* Dkt. No. 153, at 30-39), with the exception of the "reaction of the class to the settlement," which can obviously only be evaluated following notice to the class and which is now addressed.

As to that factor, "[i]t is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 173 (E.D.N.Y. 2012) (citation omitted).   It is also settled that "for due process to be satisfied, not every class member need receive actual notice [of the class settlement], as long as class counsel 'acted reasonably in selecting means likely to inform persons affected.'" *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 248-49 (E.D.N.Y. 2010) (quoting *In re Adelphia Commc'ns Corp. Sec. Litig.*, 271 Fed. App'x 41, 44 (2d Cir. 2008)) (alterations in original) (finding notice reasonable and comporting with due process when 29.92% of 922,316 person class never received actual notice).   Indeed, "notice sent by mail to the last known address of the absent class member meets the due process requirement of notice through 'reasonable effort' even where numerous class members have since changed addresses and do not

8

receive notice.'" *Stinson v. City of New York*, 256 F. Supp. 3d 283, 290 (S.D.N.Y. 2017) (quoting

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362 (S.D.N.Y. 1996)) (collecting cases);

*see also, e.g., Hernandez*, 306 F.R.D. at 97 (approving as fair and reasonable notice mailed to only

109 out of 150 putative FLSA/NYLL class members, for which only 14.6% returned claim forms

to become participating claimants, and granting final approval); *Alleyne v. Time Moving &*

*Storage, Inc.*, 264 F.R.D. 41, 46-47 (E.D.N.Y. 2010) (in FLSA/NYLL class settlement, approving

notice as fair with 16.47% undeliverable rate in 352-member class and granting final approval);

*Gonzalez v. City of New York*, 396 F. Supp. 2d 411, 418 (S.D.N.Y. 2005) (finding that mailings

reaching only one-third of potential class, "even without supplemental newspaper publications,"

constituted adequate notice); *In re W. Union Money Transfer Litig.*, 2004 WL 3709932, at \*14

(E.D.N.Y. Oct. 19, 2004) (approving settlement where undeliverable notice rate was 45% because

of "the length of the class period, the size and mobility of the Settlement Class, and the likelihood

that some name and address information may not have been accurately provided or entered at the

time").

The Second Circuit has also emphasized that "[i]f only a small number of objections are

received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores,*

*Inc.*, 396 F.3d at 118 (citation omitted).  Indeed, as many as six opt-outs out of a class of 486

potential class members "indicates the class's general approval of the Settlement Agreement."

*Romero*, 58 F. Supp. 3d at 420 (citing *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y.2008));

*see also Hernandez*, 306 F.R.D. at 100 (finding "[t]he fact that the vast majority of class members

neither objected nor opted out is a strong indication of fairness") (internal quotations omitted);

*accord Kochilas*, 2015 WL 5821631, at \*5 (same); *see also Marshall v. Deutsche Post DHL*, 2015

WL 5560541, at \*5 (E.D.N.Y. Sept. 21, 2015) (finding that reaction of the class favors settlement

9

when "[n]ot a single member of the class objected to settlement, and only one class member has opted out of the class").

As to participation rate, in *Hernandez*, the court found the second *Grinnell* factor to strongly weigh in favor of approval where the participation rate of 14.6% was "within the average range." 306 F.R.D. at 100 n.8 (citing 2 McLaughlin on Class Actions § 6:24 (8th ed.) and observing that class action settlements based on claims submission "typically have a participation rate in the 10-15 percent range"); *see Zimmer Paper Prods. Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 92 (3d Cir. 1985) (approving class action settlement where only 12% of the class submitted a claim form); *see also* Deborah R. Hensler *et al.*, Class Action Dilemmas: Pursuing Public Goals for Private Gain 9–37 (2000) ("It was estimated that somewhere between 14 and 33 percent of all eligible consumers filed claims in the Levi Strauss suit"); William Simon, Class Actions–Useful Tool or Engine of Destruction, 55 F.R.D. 375, 379 (1973) ("Even after a settlement, where class members are notified that they can share in the recovery merely by filing a simple proof of claim, only 10% to 15% bother to do so").

Here, between Rust and Class Counsel, all but forty-two out of the 311-person Class received notice of the instant settlement, zero Class Members opted-out, and zero objected, which, together, overwhelmingly indicates the settlement's fairness and recommends final approval. Furthermore, thirty-five new Class Members submitted Claim Forms out of the 311 Class Members who had not previously opted-in to this action before settlement, which when combined with the original thirty Opt-in Plaintiffs - - and when removing duplicate submissions - - represents a total of fifty-four Class Members, amounting to a 17% participation rate, a positive result which - - though on the lower end of the range of typical class action settlement participation rates - - still amounts to a reasonable percentage. *Hernandez*, 306 F.R.D. at 100 (approving wage and hour class

10

settlement with participation rate of 14.6%, noting same was "within the average range."). This *Grinnell* factor, as well as all other *Grinnell* factors, solidly supports approval and overwhelmingly indicates the settlement's fairness.

Moreover, the average individual settlement share here - - $3,717.01 - - is on the *higher* end of the spectrum as compared to typical FLSA settlement awards, further supporting the settlement's substantive fairness. *See, e.g., Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206-07 (2d Cir. 2015) (quoting *Picerni v. Bilingual Seit & Preschool Inc.*, 925 F. Supp. 2d 368 (E.D.N.Y. 2013)) ("noting that FLSA cases tend to settle for between $500 and $2000 dollars in unpaid wages").

**B.     The Court Should Approve the Settlement of the FLSA Claims**

In addition to Rule 23 settlements, settlements of FLSA claims also usually require court approval. *Cheeks*, 796 F.3d at 206-07. The standard "for approval of an FLSA settlement is lower than for a Rule 23 settlement" because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 Settlement. *Quow v. Accurate Mech.*, 2018 WL 3368673, at *4 (S.D.N.Y. July 10, 2018) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Azogue v. 16 for 8 Hospitality LLC*, 2016 WL 441422, at *5 (S.D.N.Y. Aug. 19, 2016) (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* at *5 (citation omitted).

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky*, 900 F. Supp. 2d at 335, which the Second Circuit has twice recently endorsed. *Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020); *Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 413 (2d Cir. 2019). The *Wolinsky* factors consider: (1) the plaintiff's

11

range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335.

Here, because the factors required for approval of a Rule 23 settlement are more extensive, and indeed inclusive of those required for approval of a settlement of FLSA claims, and because Named Plaintiff addressed these factors in the Preliminary Approval Motion, Named Plaintiff does not separately discuss each FLSA factor here. *See, e.g., Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 422 (S.D.N.Y. 2014).   As argued in Named Plaintiff's Preliminary Approval Motion, the "settlement was a result of contested litigation and arm's length negotiation." *Kochilas*, 2015 WL 5821631, at *7.  The Court should approve it under *Cheeks* and *Wolinsky*.

### C.    Service Awards

"Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Hernandez*, 306 F.R.D. at 101 (citation omitted).  Indeed, "[i]t is important to compensate plaintiffs for the time they spend and the risks they take." *Id*.; *see Sierra v. Spring Scaffolding LLC*, 2015 WL 10912856, at *9 (E.D.N.Y. Sept. 30, 2015) (approving service awards of $10,000 and $7,500 to plaintiffs).

Here, Named Plaintiff Melvin Deas and eight Opt-in Plaintiffs each seek service awards, as follows, for the services that they provided in obtaining this settlement for the Class, for a total amount of $65,000.00:

12

- Named Plaintiff Melvin Deas: $15,000.00;

- Opt-in Plaintiff Charles Pitt: $7,500.00;

- Opt-in Plaintiff Floyd Jones: $7,500.00;

- Opt-in Plaintiff Cory Bennet: $7,500.00;

- Opt-in Plaintiff Gerard Foote: $7,500.00;

- Opt-in Plaintiff Robert O'Connor: $5,000.00;

- Opt-in Plaintiff Martin Carrera: $5,000.00;

- Opt-in Plaintiff Jose Ordonez: $5,000.00; and

- Opt-in Plaintiff Antonio Bonilla: $5,000.00.

While they have not appeared for depositions, they have all nevertheless vigorously pursued the interests of the Class, and for purposes of settlement, their interests and the class are aligned.

Indeed, Named Plaintiff and these Opt-in Plaintiffs were instrumental in the investigation and analysis of the vital facts relevant to the Class's claims, as well as the defenses that Defendants raised throughout the course of the litigation. Minkoff Decl., ¶ 15. At the outset of the case, Named Plaintiff, as well as Charles Pitt, Floyd Jones, and Cory Bennet provided critical information and documents allowing Class Counsel to efficiently move for conditional certification. Minkoff Decl., ¶ 15. Thereafter, Gerard Foote became one of the first additional Opt-in Plaintiffs to join this action, and he became instrumental, along with the already-joined Plaintiffs, for example by attending the Parties' first mediation session with the Court's appointed mediator, Mr. Kheel. Subsequently, Robert O'Connor and Martin Carrera provided additional documents that Plaintiffs shared with Defendants and which prompted Defendants to agree to participate in the second (and then third) mediation with a new mediator, Mr. Scheinman, the last of which led to an agreement to resolve this matter in principle. Minkoff Decl., ¶ 15. In addition, Opt-in Plaintiffs Jesus Ordonez

13

and Antonio Bonilla provided written, sworn statements in support of Plaintiffs' motion seeking potential sanctions based on Defendants' alleged retaliation against certain Opt-in Plaintiffs for joining the action - - filed in between the second and third mediations - - going so far as to attend a hearing, though not ultimately being required to testify. Minkoff Decl., ¶ 16.  And then, even after reaching a settlement in principle after the Parties' third mediation session, that agreement itself was highly tenuous, as evidenced by this Court's supervision over two off-the-record settlement conference (by phone) - - first on May 26, 2020, and then on July 29, 2020 - - the latter of which resulted in the parties executing a stipulation amending their agreement to adjust Defendants' payment obligations due to financial limitations caused by the COVID-19 pandemic. Minkoff Decl., ¶ 16.

All of these Plaintiffs also participated in the lead-up to mediation by providing facts and evidence to rebut Defendants' claimed arguments in defense of Plaintiffs' allegations.  They also remained actively involved throughout the litigation and negotiation process, conferring with Class Counsel regularly regarding next steps and strategy. Minkoff Decl., ¶ 17.  Compared to many approved employment class action service awards, the total and individual service awards requested here are modest, representing only 4.33% of the total gross settlement fund. *See, e.g.*, *Gay v. Tri-Wire Engineering Solutions, Inc.*, 2014 WL 28640, at *13-14 (E.D.N.Y. Jan. 2, 2014) (approving service award for named plaintiff amounting to 4% of total gross settlement amount in $183,123.60 wage and hour class settlement); *Johnson v. Brennan*, 2011 WL 4357376, at *2 (S.D.N.Y. Sept. 16, 2011) (awarding service awards of $10,000.00 each to four plaintiffs for a total of $40,000.00, totaling 9.1% of the $440,000.00 FLSA/NYLL settlement); *Reyes v. Altamarea Grp., LLC*, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (in wage and hour class action settlement, approving service awards to four class representatives, where each individual

14

service award of $15,000 represented 5% of the total settlement). Importantly, the Class Members were notified of the exact amount of the service awards to each of these Plaintiffs in the Notice, and again, there were no objections and no opt-outs, showing support for the awards. *See* Dkt. No. 154-3, at 4, 8. This supports approval of the service awards sought here. *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 298 (E.D.N.Y. 2015) (approving service award and noting that "not one class member objected to the service award"); *see also Reyes v. Altamarea Group, LLC*, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (awarding total of $50,000.00 in service awards in $300,000.00 class settlement - - including three $15,000.00 awards); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (granting multiple service awards - - one of $30,000.00, two $15,000.00 awards, and a $7,500.00 award - - for a combined total of $67,500.00 out of $7,675,000.00 settlement); *Torres v. Gristede's Operating Corp.*, 2010 WL 5507892, at *8 (S.D.N.Y. Dec. 21, 2010) (awarding $15,000.00 service awards to fifteen separate plaintiffs, in addition to other awards in a $3,530,000.00 settlement).

In light of these considerations, the service awards here are fair and reasonable and Plaintiff respectfully requests that the Court approve them.

### D.      Attorneys' Fees

#### 1.      The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in this Circuit

When a common fund is created as part of a settlement, the Second Circuit has recently reaffirmed that "the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully by allowing the latter to share in both the upside and downside risk of litigation." *See Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 71 (2d Cir. 2019) (citation omitted); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

15

Still, to assess the reasonableness of a requested fee, courts usually "[a]pply[] the lodestar method as a cross check." *See Fresno Cnty. Employees' Ret. Ass'n*, 925 F.3d at 72 (citing *Goldberger*, 209 F.3d at 50) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"). Notably, "[a]lthough the Court has discretion to award attorneys' fees based on the lodestar method or percentage-of-recovery method, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award." *Azogue*, 2016 WL 4411422, at *6 (citation omitted).

Moreover, when determining reasonableness of the requested fee based on the percentage-of-recovery method, it is well settled that the analysis should be based on the "entire fund made available" and **not** based on a percentage of the claims made against the maximum gross funds. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-37 (2d Cir. 2007) (in class settlement regarding unpaid commissions for workers, reversing as abuse of discretion district court ruling on final approval cutting attorneys' fees based on percentage of the fund actually claimed rather than based on percentage of total fund made available). Indeed, as the Second Circuit explained:

> The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.

*Id.* at 437.

> a.    *The Second Circuit recently found percentage of the gross settlement fund, rather than percentage of fund net expenses to be* <u>*fair and reasonable.*</u>

In *Kornell v. Haverhill Ret. Sys.*, 790 Fed. App'x 296, 298-99 (2d Cir. 2019), the Second Circuit, in a summary order, weighed the issue of calculating attorneys' fees in a class action settlement. Specifically, the court considered whether such fees should be calculated based on a

percentage of the gross settlement fund, or based on the settlement fund *net* of expenses, and determined that the district court did not abuse its discretion by awarding class counsel a percentage based upon the ***gross*** settlement fund. *Id*. (emphasis added).  Noting that the touchstone in an attorneys' fee award analysis was reasonableness, the court held that because Federal Rule of Civil Procedure 23(h) does not bar one method or the other, "[a] district court has discretion to award Class Counsel a percentage of the gross class action settlement fund, provided that its award of attorneys' fees is reasonable." *Id*. (citing *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000)); *see also Masters*, 473 F.3d at 437 (explaining that a district court can avoid a "windfall" by adjusting the percentage awarded in order to come up with a fee it deems reasonable in light of the *Goldberger* factors, though emphasizing that said percentage must still be based on the total fund made available, not the portion of the fund claimed).

Moreover, the Second Circuit also recently clarified that "[w]hile in some cases the proportion of fees may be relevant in considering the reasonableness of an award (for example, the multi-million dollar securities class action involving a common fund, often cited by district courts in evaluating fee requests, *see Goldberger*, 209 F.3d at 50-51), there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit." *Fisher*, 948 F.3d at 600.  Here, the requested fee of one-third of the gross maximum settlement fund - - consistent with the typically requested fee in wage and hour class action settlements - - does not result in a windfall to Class Counsel.  Instead, it represents a reasonable multiplier of 2.7.  Because the Second Circuit has approved of this method of calculation in situations where the *Goldberger* factors support plaintiffs' counsel's requested fee award, Class Counsel submits that one-third of the gross settlement fund is reasonable in this matter.  That no

17

one objected or opted out further supports this, particularly considering that Class Counsel's requested attorneys' fees were included in the notice, thereby warranting Court approval.

> ### b.    *The Goldberger Factors Support an Award of one-third of the Gross Fund Created*

"Reasonableness is the touchstone for determining attorneys' fees." *Asare*, 2013 WL 6144764, at *18. "To determine whether a fee is reasonable, courts look to the factors identified by the Second Circuit in *Goldberger*." *Siddiky v. Union Square Hospitality Grp., LLC*, 2017 WL 2198158, at *9 (S.D.N.Y. May 17, 2017) (citing *Goldberger*, 209 F.3d at 50). Those factors are: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Id*. at 50. "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors, such as the risk of the litigation and the performance of the attorneys." *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029, at *2 (E.D.N.Y. June 26, 2017) (citation omitted).

In the present case, all of the *Goldberger* factors weigh in favor of awarding Class Counsel its requested fees of one-third of the gross settlement fund.

> ### i.    *The Firm's Time and Labor*

Class Counsel, Borrelli & Associates, P.L.L.C. ("B&A" or "the Firm" or "Class Counsel"), spent significant effort to obtain the $1,500,000.00 settlement fund. As the Court well-knows, the parties engaged in substantial discovery and motion practice, attended several hearings before this Court, conducted three separate private mediation sessions, and engaged in substantial settlement-focused discovery following the Court's order granting conditional certification and Class Counsel disseminating notice of pendency. As the Court is also aware, in addition to substantial work

leading up to and securing the settlement in principle in this matter, there was additional and voluminous work to be done finalizing the class settlement agreement, drafting the Preliminary and Final approval motions, responding to and addressing the Defendants' concerns relating to their ability to pay in light of financial hardship caused by the COVID-19 pandemic, and working with Rust to administer the settlement and responding to inquiries from numerous Class Members concerning same. Dkt. No. 154, ¶ 15 (Minkoff Decl. in support of Preliminary Approval Motion).

In performing the above tasks, B&A expended approximately 676.63 hours of attorney and paralegal time in this matter as of February 23, 2021, including billable and nonbillable hours, which were recorded by contemporaneously maintained time records and which produces an aggregate lodestar of $181,296.00.[2] Moreover, the requested fee is not based solely on time and effort already expended, as it is also meant to compensate the Firm for time that it will be required to spend in its continued efforts administering the settlement post submitting the instant Motion, after final approval, and responding to further inquiries from Class Members. *See Beckman*, 293 F.R.D. at 481 (noting that "[i]n wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."). For example, the Firm will need to oversee and monitor the payment to the Class Members by the Claims Administrator, deal with any issues of late payment or late cashed checks, and potentially respond to inquiries from the Class Members or the administrator. Thus, the Firm's lodestar will only increase.

---

[2] The requested rates used for this calculation are explained below and in the Minkoff Decl., ¶¶ 29-30, 35-36, 42-43, 46, 51, 54, and 56.

*ii.*        *The Magnitude and Complexities of the Litigation*

"In evaluating the second *Goldberger* factor, '[t]he size and difficulty of the issues in a case are significant factors to be considered . . .'" *Hall*, 2016 WL 1555128, at \*15 (quoting *Sukhnandan*, 2014 WL 3778173, at \*10). "To that end, among FLSA cases, the most complex type is the hybrid action brought here, where state wage and hour violations are brought as an opt out class pursuant to Rule 23 in the same action as the FLSA opt in collective action pursuant to 29 U.S.C. § 216(b)." *Id*. (internal quotations omitted).

In *Bijoux v. Amerigroup N.Y., LLC*, 2016 WL 2839797, at \*1 (E.D.N.Y. May 12, 2016), the court awarded one-third of the total gross settlement fund in attorneys' fees as "justified by the work that Class Counsel did negotiating the settlement and conducting the litigation, the ultimate recovery, and the risk that Class Counsel undertook in bringing the claims." In the present action, the Firm pursued and secured a class-wide settlement on behalf of 311 people, with fifty-four individuals set to receive settlement payments, securing a $1,500,000.00 settlement fund, to which there were no objections and no requests for exclusion. The Firm seeks the customary fee of one-third of the maximum gross fund. This factor supports the Firm's requested fee.

*iii.*        *The Risk of Litigation*

Also previously discussed in connection with Named Plaintiff's Preliminary Approval motion, the risk of litigation, taking into account the settlement result, warrants the Firm's requested fee award. Indeed, "[d]espite the most vigorous and competent of efforts, success is never guaranteed." *Grinnell*, 495 F.2d at 471. This is even truer today with the added uncertainty arising out of the COVID-19 pandemic, further warranting fully and finally settling this matter once and for all before any potential "second wave" or other complications may arise (though of course hopefully not) in the not-too-distant future with the emergence of more and more COVID "variants" and with the slow vaccine rollout currently taking place in New York City. Class

20

Counsel's efforts will ensure meaningful settlement funds reach the Class Members in a time of great economic uncertainty. Indeed, the pandemic's spread specifically required the Parties to renegotiate their settlement here, and it remains in the background as a potential risk factor should the Court decline to grant final approval of the settlement and restore the parties to the *status quo ante*. Dkt. No. 154-2; Dkt. No. 155, ¶ 15.

Here, Class Counsel should be rewarded for securing this settlement despite the risks assumed, as the Firm undertook the matter on a full contingency basis, *see* Minkoff Decl., ¶ 22, and achieved a settlement following substantial time and effort. *Siddiky*, 2017 WL 2198158, at *4. Additionally, the Firm "risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation." *Kochilas*, 2015 WL 5821631, at *9; Minkoff Decl., ¶ 28.

Based on the reasonableness of the award in light of the significant risk, the Firm achieved an excellent result. This third *Goldberger* factor weighs in favor of the Firm's requested fee award.

### iv.    *The Quality of the Representation*

"To determine the quality of the representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Hall*, 2016 WL 1555128, at *15; *see Bijoux*, 2016 WL 2839797, at *1 (awarding one-third of the gross fund in attorneys' fees and noting that class counsel were "experienced class action employment lawyers with good reputations among the employment law bar"). "The quality of representation is best measured by results." *Goldberger*, 209 F.3d at 55.

In the present case, "Class Counsel's skill and experience was directly responsible for this favorable settlement." *Asare*, 2013 WL 6144764, at *21. Indeed, based on the results achieved and the Class Members' favorable reaction, it is clear that the "diligent work performed by Class Counsel in litigating and settling this matter demonstrates their commitment to the Class Members and their interests." *Id*.

21

B&A has been appointed Class Counsel in several other similar matters based upon the Firm's experience, as of five years ago, "prosecut[ing] over one thousand cases in state and federal court, the large majority of which are employment actions," which number has substantially increased since. *Vivaldo v. United Talmudical Acad. of Kiryas Joel, Inc., et al*, 2015 WL 4922961, at \*5 (S.D.N.Y. June 18, 2015), *report and recommendation adopted,* 2015 WL 10793126 (S.D.N.Y. Sept. 17, 2015).   Recent cases that courts have appointed B&A as class counsel are listed in the Minkoff Declaration, ¶ 21.  This factor strongly weighs in favor of the Firm's requested fee award.

<center>v.       <u>The Requested Fee in Relation to the Settlement</u></center>

The Second Circuit recently held in *Fisher* that "[n]either the text nor the purpose of the FLSA . . . supports imposing a proportionality limit on recoverable attorneys' fees." 948 F.3d at 603 (finding that "[b]y implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking 'run of the mill' FLSA cases where the potential damages are low and the risk of protracted litigation high"); *Guan v. Long Island Bus. Institute, Inc.*, 2020 WL 1289517, at \*4 (S.D.N.Y. Mar 18, 2020) (citing *Fisher*, rejecting proportionality limitations of traditional one-third fee arrangements, and awarding attorneys' fees of 35% in FLSA collective action settlement).  Nonetheless, should this Court still analyze the proportion of Class Counsel's requested fee as compared to the Gross Settlement Fund (or even the amount of the Net Settlement Fund claimed by Class Members), courts do so to ensure that the percentage awarded does not constitute a "windfall." *Asare*, 2013 WL 6144764, at \*21.  Under the Settlement Agreement here, the Parties agreed that, subject to Court approval, Class Counsel would receive $500,000.00 as attorneys' fees, representing one-third of the total maximum Gross Settlement Fund.  Again, this is consistent with fees approved in other wage and hour hybrid class and collective cases within the Second Circuit, both pre- and

<center>22</center>

post-*Fisher*. *See, e.g., Guan*, 2020 WL 1289517, at *4 (awarding attorneys' fees of 35% in FLSA collective action settlement and noting "[a]lthough courts in this Circuit had routinely imposed a proportionality limit on attorneys' fees in FLSA actions—specifically, limiting attorneys' fees to 33% or less of the net settlement amount—the Second Circuit recently rejected this approach."); *Suarez v. Rosa Mexicano Brands Inc.*, 2018 WL 1801319, at *1-*2 (S.D.N.Y. Apr. 13, 2018) (awarding 33.33% attorneys' fee of $1,200,000.00 in a $3,600,00.00 settlement, amounting to a 4.62 multiplier, in a claims-made, reversionary settlement for restaurant workers); *see also Bijoux*, 2016 WL 2839797, at *1. Thus, the requested fee of one-third of the total maximum fund in a post-*Fisher* and post-*Kornell* world is reasonable in relation to the settlement.

<div align="center">

vi.    *Public Policy Considerations*

</div>

"Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Beckman*, 293 F.R.D. at 477 (internal quotations omitted). "Where relatively small claims can only be prosecuted through aggregate litigation, 'private attorneys general' play an important role." *Kochilas*, 2015 WL 58216, at *8 (internal quotations omitted). "Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL." *Id*. (collecting cases).

In the present matter, Class Counsel agreed to assume the risk of time, effort, and advanced costs "with no ultimate guarantee of compensation" by representing the Plaintiffs on a full contingency basis. *See* Minkoff Decl., ¶ 22. The favorable reaction by the Class Members confirms their satisfaction with Class Counsel's result, as the amount of requested attorneys' fees was provided in the Notices, Dkt. No. 154-3, informing the Class Members of the requested fees and their ability to exclude themselves or to object to the settlement if they disagreed. *See Azogue*, 2016 WL 4411422, at *7 (approving counsel's request for 33.33% of the Fund, noting fee

<div align="center">

23

</div>

requested was included in notice to class members, and observing that favorable class reaction "provides support for Class Counsel's fee request"); *Hall*, 2016 WL 1555128, at *15 (collecting cases). Here, again, not one person objected.

And again, should there be any hesitation to approve the multiplier requested here, the Second Circuit in *Fisher* - - albeit not a class case - - affirmatively rejected any "proportionality" considerations in evaluating attorneys' fee awards in FLSA case:

> A proportionality rule would also be inconsistent with the remedial goals of the FLSA . . . [b]y implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking on "run of the mill" FLSA cases where the potential damages are low and the risk of protracted litigation high. Fee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel . . . [T]he law cannot be read to impose a proportional limitation based on the perceived complexities of the litigation.
>
> <div align="center">* * *</div>
>
> While in some cases the proportion of fees may be relevant in considering the reasonableness of an award (for example, the multi-million dollar securities class action involving a common fund, often cited by the district courts in evaluating fee requests, *see Goldberger*, 209 F.3d at 50-51), there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit. [ ] Even if helpful, however, the percentage of attorneys' fees cannot be the determinative factor in evaluating the reasonableness of the award.

948 F.3d at 603-05 (internal citations and quotations omitted). Indeed, based on the results achieved and the Class Members' favorable reaction, it is clear that the "diligent work performed by Class Counsel in litigating and settling this matter demonstrates their commitment to the Class Members and their interests." *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177, at *3 (S.D.N.Y. May

<div align="center">24</div>

28, 2009); *see also Aguilar et al. v. Trolio Landscaping, Inc. et al.*, No. 16-cv-2230, at Dkt. No. 23 (S.D.N.Y. Feb. 16, 2017) (Judge Seibel noting that courts "should not give plaintiffs' lawyers any incentive to undertake unnecessary discovery or motion practice in a case that can settle early").

Based on the foregoing, all of the *Goldberger* factors weigh in favor of the requested fee award.

### 2. The Lodestar Cross-Check Further Supports an Award of One-Third of the Settlement Fund.

#### a. The Lodestar Multiplier is Within a Reasonable Range.

Courts within the Second Circuit regularly award lodestar multipliers from two to four times the lodestar. *See, e.g., Lesser v. TIAA Bank, FSB*, 2020 WL 6151317, at *4 (S.D.N.Y. Oct. 20, 2020) (collecting cases and noting routine approval of attorneys' fees awards in FLSA settlements under *Cheeks* with multipliers between two and four); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) (noting multipliers between two and six as appropriate, and awarding multiplier of 3.04); *see also Bravo v. Palm West Corp.*, No. 14-cv-9193, Dkt. 62 (S.D.N.Y. Mar. 11, 2016) (awarding $500,000.00 fee, representing 3.5 multiplier in FLSA / NYLL class action); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) (awarding multiplier of 4.87); *Capsolas v. Pasta Res., Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (awarding multiplier of 3.96); *see also, e.g., Toure*, 2012 WL 3240461, at *5 (awarding multiplier of 3.53); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-186 (W.D.N.Y. 2011) (awarding multiplier of 5.3); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8-10 (E.D.N.Y. Jan. 20, 2010) (awarding multiplier of 3.3); *Maley*, 186 F. Supp. 2d at 371 (finding "the modest multiplier of 4.65 [ ] fair and reasonable."). Moreover, many district courts in this Circuit have continued to follow the common practice of awarding one-third of the

25

maximum gross settlement fund in wage and hour actions, including awarding multipliers much higher than 2.7 sought here. *See, e.g., Hadel v. Gaucho, LLC*, 2016 WL 3647600, at *1 (S.D.N.Y. June 30, 2016) (granting multiplier of five); *Puglisi v. TD Bank, N.A.*, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving one-third of a $9,900,000 gross settlement fund, representing a 4.8 multiplier); *Flynn v. N.Y. Dolls Gentlemen's Club*, 2015 WL 3916161, at * 1 (S.D.N.Y. April 28, 2015) (granting 4.5 multiplier); *Ceka v. PBM/CMSI Inc.*, 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) (awarding 3.36 multiplier).

Here, as a cross-check, when calculated pursuant to the lodestar, Class Counsel's attorney's fees as of this submission are $181,296.00, representing a 2.7 multiplier.  This is well within the range of reasonable multipliers that courts within the Second Circuit approve, as described above. Additionally, as discussed *supra*, Class Counsel's obligation to the Class Members is not over. Indeed, Class Counsel has a continuing obligation to "represent the Class during the settlement approval process and the disbursement phase" although they will not make a supplemental fee application or seek further payment. *Kochilas*, 2015 WL 5821631, at *9.  Accordingly, the Firm's lodestar will increase and the requested multiplier will correspondingly decrease.

> b.    The Firm's rates used to calculate the lodestar are fair and <u>reasonable.</u>

Courts in this District have determined in recent cases that an hourly fee ranging from $250.00 to $450.00 is appropriate for experienced litigators in wage-and-hour cases." *Lizondro-Garcia*, 2015 WL 4006896, at *7 (collecting cases).  Regarding how Class Counsel calculated the Firm's lodestar, the rates and experiences of the employees who worked on this matter are described in the Minkoff Decl., ¶¶ 18-57.  Courts in this District and the Eastern District of New York have routinely approved these rates in contested wage and hour cases such as this one. *See, e.g., Tejada v. La Selecta Bakery, Inc.*, 17-cv-05882-EK-RER, Dkt. No. 50 (Mem. & Order

adopting Rep. & Rec. Granting Default Judgment) (E.D.N.Y. Nov. 25, 2020) (on a default motion, on which fees were sought pursuant to the lodestar method, noting rates between $200 and $400 for B&A attorneys "fall within the range typically approved by this Court . . . [and] find[ing] the requested hourly rates to be reasonable"); *Salto v. Alberto's Constr., LLC*, 2020 WL 4383674, at *7 (S.D.N.Y. July 31, 2020) (citing *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 28 (S.D.N.Y. 2015)) (on a contested motion to enforce a settlement agreement and for an award of attorneys' fees incurred with same, specifically approving B&A's requested hourly rates of $350.00 for Alexander T. Coleman, Esq., partner, and $290.00 per hour for lead associate litigating case, and noting same "are reasonable"); *In re Murray ex rel. Pryor v. Ambassador Coll. Bookstores, Inc.*, Case No. 2:18-cv-01388-AKT, ECF # 45 (E.D.N.Y. Dec. 13, 2019) (on a *Cheeks* motion, noting that "[t]he thorough and well-reasoned presentation of counsel with regard to the fairness and reasonableness assessment is persuasive. . . [t]he Court . . . finds that . . . [t]he hourly rates in this case . . . fall within the range of reasonable rates within the Eastern District of New York."); *Perez v. Merrick Deli & Grocery, Inc. et al.*, 13-cv-5166-ILG-JO, Dkt. No. 60 (E.D.N.Y. Apr. 4, 2019) (on a contested attorneys' fees motion filed after trial in a wage and hour case, awarding Borrelli & Associates, P.L.L.C. attorneys' fees at the rates that they request here, and recognizing that that "this Court and the neighboring Southern District of New York have routinely approved these billing rates for Borrelli & Associates"); *Patino v. Brady Parking, Inc.*, 2015 WL 2069743, at *2 (S.D.N.Y. Apr. 30, 2015) (Freeman, *J.*) (almost six years ago, on a sanctions motion, approving rates of $400.00 per hour for Mr. Borrelli, $325.00 per hour for Mr. Coleman, $250.00 per hour for one of the Firm's associates, and $75 per hour for the Firm's paralegals); *see also Copper v. Cavalry Staffing, LLC et al.*, No. 14-cv-3676, Dkt. No. 255 (E.D.N.Y. Feb. 12, 2018) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman,

$295.00 per hour for lead associate attorney, and $90.00 per hour for the Firm's paralegals); *Vivaldo v. United Talmudical Academy of Kiryas Joel, Inc.*, 14-cv-2636-GWG, Dkt. No. 128 (S.D.N.Y. Feb. 9, 2018) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per hour for lead associate attorney, and $90.00 per hour for the Firm's paralegals).

Additionally, the party seeking a fee award "has the burden of showing by satisfactory evidence – in addition to the attorney's own affidavits – that the requested hourly rates are the prevailing market rates." *Sandoval v. Materia, Bros., Inc.*, 2013 WL 1767748, at *4 (S.D.N.Y. Mar. 5, 2013), *report and recommendation adopted*, 2013 WL 1759581 (S.D.N.Y. Apr. 24, 2013). Class Counsel meets its burden by providing affidavits from other attorneys practicing employment law in the area attesting to the reasonable of the herein requested rates. *See* Minkoff Decl., ¶ 57, **Exhibit D**. Class Counsel's contemporaneous billing records are annexed to the Minkoff Decl., ¶ 19, **Exhibit B**. For the foregoing reasons, Class Counsel's request for $500,000.00, or one-third of the gross settlement fund, is reasonable.

## E.      Litigation Expenses

Counsel should be awarded expenses that are "necessary and were directly related to the results achieved." *Siddiky*, 2017 WL 2198158, at *12 (citation omitted). Class Counsel's costs and disbursements for this case are $11,317.22. *See* Minkoff Decl., ¶ 20. This includes costs for the filing fee, service, postage, disseminating notice at the conditional certification stage, research, travel, mediation, and PACER fees. *See id*. A copy of Class Counsel's Litigation Expenses is attached to the Minkoff Declaration as **Exhibit C**.

28

### F.    Claims Administrator's Fees and Costs

Rust requests reimbursement for its fees and future costs in the amount of $13,905.00. *See* Mills Decl., ¶ 9. This is far less than what courts have approved for claims administration costs in similar cases, and indeed Class Counsel selected Rust based on its ability to provide a competitive quote that best served the interests of the class. *Siddiky*, 2017 WL 2198158, at *12 (approving claims administration fess of $33,500.00 and noting that "[c]ourts within this district have awarded up to $50,000.00 for the settlement claims administrator"); Minkoff Decl., ¶ 6. More information on Rust is supplied in the Mills Declaration.

### IV.    CONCLUSION

A Proposed Order is attached as **Exhibit G** to the Minkoff Declaration. For the reasons stated herein, respectfully, this Court should grant final approval of the settlement, authorize the distribution of settlement checks to the fifty-four Class Members who are participating in this Settlement, representing their share of the Settlement Fund, approve the requested service awards, attorneys' fees, and expenses, dismiss the case with prejudice, and enter a Final Order. Lastly, the

Court should retain jurisdiction over the construction, interpretation, implementation, and enforcement of the Parties' Settlement and distribution of the settlement funds.

Dated:  New York, New York
        February 23, 2021

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiffs*
655 Third Avenue, Suite 1821
New York, New York 10017
Tel. (212) 679-5000
Fax. (212) 670-5005

_____
Michael R. Minkoff (MM4787)
Alexander T. Coleman (AC1717)
Michael J. Borrelli (MB8533)

30